## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTOINE PHARR**<br>39 Midlands Heights Apt. A<br>Midland, PA 15059 | CASE NO. 5:23-cv-2752 |
| **JAMES SULLIVAN**<br>1701 North 18th Street<br>Allentown, PA 18104 | |
| **JERRY LUCAS**<br>264 Township Road 380<br>Steubenville, OH 43952 | JURY TRIAL DEMANDED |
| Individually and on Behalf of All Others<br>Similarly Situated, | |
| Plaintiffs,<br>v. | |
| **TREEWAYS FLEET LLC**<br>1550 Pond Road Suite 200<br>Allentown, PA 18104 | |
| **TREEWAYS INC.**<br>1550 Pond Road Suite 200<br>Allentown, PA 18104 | |
| **TREEWAYS HOLDINGS LLC**<br>1550 Pond Road Suite 200<br>Allentown, PA 18104 | |
| Defendants | |

## CLASS ACTION COMPLAINT

Plaintiff Antoine Pharr, James Sullivan, and Jerry Lucas (collectively, "Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendant, Treeways Fleet LLC, Treeways Inc., and Treeways Holdings, (collectively, "Treeways" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, and alleges as follows:

1

## SUMMARY OF THE CASE

1.      Between February 6, 2023, and February 24, 2023, Treeways, a "leading full-service vegetation management solution for utilities, transportation, and other critical industries"[1], lost control over its current and former employees' highly sensitive personal information in a data breach perpetrated by cybercriminals ("Data Breach"). The number of total breach victims is unknown, but on information and belief, the Data Breach has impacted at least thousands of former and current employees.

2.      On information and belief, the Data Breach occurred on or around February 6, 2023, when cybercriminals first accessed Defendant's network, and was not discovered by Defendant until February 24, 2023, an appalling eighteen days later. Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to current and former employees' personally identifiable information ("PII") and protected health information ("PHI") (collectively with PII, "Sensitive Information"). Defendant struggled to identify what information was involved in the Data Breach and whom it belonged to until April 18, 2023, two months later.

3.      On or about June 16, 2023– four months after the Data Breach occurred and when Defendant first learned of the Data Breach – Treeways finally began notifying Class Members about the Data Breach ("Breach Notice"), an example of which is attached as Exhibit A.

4.      Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell its employees how many people were impacted, how the breach happened, or why it took the Defendant four months to begin notifying victims that hackers had gained access to highly sensitive employee information.

5.      Defendant's failure to timely detect and report the Data Breach made its current

---

[1] Treeways, https://treeways.com/ (last accessed July 11, 2023)

and former employees vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

6.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of Sensitive Information misuse.

7.      In failing to adequately protect employees' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its affiliates' current and former employees.

8.      Plaintiffs and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Sensitive Information. Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

9.      Plaintiff Pharr is a Treeways employee and Data Breach victim. Mr. Pharr has been working for Treeways since 2021.

10.     Plaintiff Sullivan is a former Treeways employee and Data Breach victim. Mr. Sullivan worked for Treeways from approximately 2015 - October 2021.

11.     Plaintiff Lucas is a Treeways employee and Data Breach victim. Mr. Lucas has been working for Treeways since 2021.

12.     Accordingly, Plaintiffs, on their own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

13.     Plaintiff, Antoine Pharr, is a natural person and citizen of Pennsylvania, residing in Midland, Pennsylvania, where he intends to remain. Mr. Pharr is a Treeways employee and Data Breach victim, receiving Defendant's Breach Notice on June 23, 2023.

14.     Plaintiff, James Sullivan, is a natural person and citizen of Pennsylvania, residing in Allentown, Pennsylvania, where he intends to remain. Mr. Sullivan is a former Treeways employee and Data Breach victim, receiving Defendant's Breach Notice in June 2023.

15.     Plaintiff, Jerry Lucas, is a natural person and citizen of Ohio, residing in Steubenville, Ohio, where he intends to remain. Mr. Lucas is a Treeways employee and Data Breach victim, receiving Defendant's Breach Notice on June 20, 2023.

16.     Defendant, Treeways Fleet LLC, is a Pennsylvania Limited Liability Company, with its principal place of business at 1550 Pond Road Suite 200 Allentown, PA 18104.

17.     Defendant, Treeways Inc., is a Delaware Corporation, with its principal place of business at 1550 Pond Road Suite 200 Allentown, PA 18104.

18.     Defendant, Treeways Holdings LLC, is a Delaware Limited Liability Company, with its principal place of business at 1550 Pond Road Suite 200 Allentown, PA 18104.

## JURISDICTION & VENUE

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

20.     This Court has personal jurisdiction over Defendant because Treeways is headquartered in this District and Treeways conducts substantial business in this District.

Venue is proper in this District because Treeways is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## BACKGROUND FACTS

***Treeways***

21.     Treeways touts itself to be a "leading full-service vegetation management solution for utilities, transportation, and other critical industries".[2]

22.     On information and belief, Treeways accumulates highly private Sensitive Information of its employees.

23.     On information and belief, Treeways maintains former employees' Sensitive Information for years—even decades—after the employee-employer relationship is terminated.

24.     In collecting and maintaining its employees' Sensitive Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their PII.

25.     Indeed, Treeways promises that it is "committed to handling information about you responsibly and we recognize and respect your right to privacy".[3]

26.     Treeways boasts that it takes multiple measures to keep the personal information it collects confidential and secure:

**HOW WE KEEP PERSONAL INFORMATION SECURE**

We take technical and organizational measures to keep your information confidential and secure in accordance with our internal procedures covering the storage, access and disclosure of information. Information may be kept on our information technology systems, in the information technology systems of our third party service providers, or in paper files.

---

[2] Treeways, https://treeways.com/ (last accessed July 11, 2023)
[3] Privacy Policy, Treeways, https://treeways.com/privacy-policy/ (last accessed July 11, 2023).

27.     Despite recognizing its duty to do so, on information and belief, Treeways has not implemented reasonable cybersecurity safeguards or policies to protect employee Sensitive Information or trained its IT or data security employees to prevent, detect, and stop breaches of Treeways' systems. As a result, Treeways leaves vulnerabilities in its systems for cybercriminals to exploit and gain access to employee Sensitive Information.

***Treeways Fails to Safeguard Employees' PII***

28.     Plaintiffs are current and former employees of Treeways.

29.     As a condition of employment with Treeways, Defendant requires its employees to disclose Sensitive Information including but not limited to, their full names and Social Security numbers. Defendant used that Sensitive Information to facilitate its employment of Plaintiffs, including payroll and health insurance, and required Plaintiffs to provide that Sensitive Information to obtain employment and payment for that employment.

30.     On information and belief, Treeways collects and maintains current and former employees' Sensitive Information in its computer systems.

31.     In collecting and maintaining the PII, Treeways implicitly agrees it will safeguard the data using reasonable means according to its internal policies and federal law.

32.     According to the June 14, 2023, Breach Notice, Treeways "discovered suspicious activity on an employee's email account" on February 24, 2023. Ex. A. An internal investigation revealed that an unauthorized actor had gained access to one of Treeways' employee email accounts as early as February 6, 2023.

33.     In other words, Defendants' investigation revealed that their network had been hacked by cybercriminals and that Defendants' inadequate cyber and data security systems and measures allowed those responsible for the cyberattack to obtain files containing a treasure trove

of thousands of Treeways employees' personal, private, and sensitive information, including but not limited to employees' names, Social Security numbers, health insurance group number, health insurance policy number, treatment cost information, subscriber member number, and health benefit plan number.

34.    Additionally, Defendant admitted that Plaintiffs' and the Class's Sensitive Information may have been actually stolen during the Data Breach, confessing that the information was "potentially accessed and/or **acquired**". Ex. A.

35.    Employees place value in data privacy and security. These are important considerations when deciding who to work and provide services for. Plaintiffs would not have accepted the Defendants' employment offer, nor provided their PII, to Treeways had they known that Treeways does not take all necessary precautions to secure the Sensitive Information given to it by its employees.

36.    On or about June 16, 2023–four months after the Data Breach occurred– Treeways finally notified Plaintiffs and Class Members about the Data Breach.

37.    Despite its duties and alleged commitments to safeguard Sensitive Information, Treeways does not follow industry standard practices in securing employees' Sensitive Information, as evidenced by the Data Breach and stolen employee Sensitive Information.

38.    In response to the Data Breach, Treeways contends that it "we are working to implement additional security measures to further protect against similar incidents in the future" Ex. A. Although Treeways fails to expand on these alleged "additional security measures" are, such steps should have been in place *before* the Data Breach.

39.    Through its Breach Notice, Treeways also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant

against incidents of identity theft and to review your account statement and credit reports to detect errors or suspicious activity." Ex. A.

40.    On information and belief, Treeways has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers. Further, the breach exposed employees' nonpublic, highly private information, a disturbing harm in and of itself.

41.    Even with complimentary credit monitoring services, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

42.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

43.    On information and belief, Treeways failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over employee Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing Sensitive Information. Further, the Breach Notice makes clear that Treeways cannot, or will not, determine the full scope of the Data Breach.

***Plaintiff Pharr's Experience***

44.    Plaintiff Pharr is a Treeways employee.

45.     As a condition of employment with Treeways, Plaintiff was required to provide his PII, including but not limited to his full name and Social Security number.

46.     Plaintiff provided his Sensitive Information to Treeways and trusted that the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

47.     Plaintiff Pharr received a Breach Notice on June 23, 2023, from Defendant, indicating that his Sensitive Information, including at least his name, bank account information, date of birth, and Social Security number, may have been compromised in the Data Breach. In addition to the damages detailed herein, the Data Breach has caused Plaintiff Pharr to be at substantial risk for further identity theft.

48.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for four months after Treeways finally discovered the Data Breach.

49.     Plaintiff suffered actual injury from the exposure of his Sensitive Information — which violates his rights to privacy.

50.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Sensitive Information. After all, Sensitive Information is a form of intangible property—property that Defendant was required to adequately protect.

51.     Plaintiff does not recall ever learning that his Sensitive Information was compromised in a data breach incident, other than the breach at issue in this case.

52.     As a result of the Data Breach and the recommendations of Defendant's Notice, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial

account statements, changing his online account passwords, placing a credit freeze through the three main credit bureaus, and monitoring his credit information as suggested by Defendant.

53.    Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

54.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

55.    In fact, following the Data Breach, on April 26, 2023, Plaintiff's wife's debit card, which is linked to the bank account receiving Plaintiff's direct deposits from Treeways, experienced a fraudulent charge amounting to $10.00. That same day, Plaintiff's bank requested confirmation from Plaintiff regarding a fraudulent charge amounting to $138.95 from Glow Hair, a brand Plaintiff is unfamiliar with and certainly did not order from. These fraudulent charges and attempts at charges suggest that Plaintiff's information has been stolen and placed in the hands of cybercriminals.

56.    On June 23, 2023, Plaintiff received an alert from Premier bank informing him of a fraudulent attempt to purchase an Amazon Prime video for $10.59, further evidencing that Plaintiff's information has been stolen and placed in the hands of cybercriminals. As a result of these multiple fraudulent charges stemming from the Data Breach, Plaintiff was forced to close

the bank account associated with Treeways direct deposit.

57.    Finally, Plaintiff also received spam calls and texts following the Data Breach.

58.    Plaintiff has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Sullivan's Experience**

59.    Plaintiff Sullivan is a former Treeways employee.

60.    As a condition of employment with Treeways, Plaintiff was required to provide his PII, including but not limited to his full name and Social Security number.

61.    Plaintiff provided his Sensitive Information to Treeways and trusted that the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

62.    Plaintiff Sullivan received a Breach Notice in June 2023, from Defendant, indicating that his Sensitive Information, including at least his name, Social Security number, date of birth, medical claims records, and insurance policy may have been compromised in the Data Breach. In addition to the damages detailed herein, the Data Breach has caused Plaintiff Sullivan, to be at substantial risk for further identity theft.

63.    Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for four months after Treeways finally discovered the Data Breach.

64.    Plaintiff suffered actual injury from the exposure of his Sensitive Information — which violates his rights to privacy.

65.    Plaintiff suffered actual injury in the form of damages to and diminution in the

value of his Sensitive Information. After all, Sensitive Information is a form of intangible property—property that Defendant was required to adequately protect.

66.     As a result of the Data Breach and the recommendations of Defendant's Notice, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through the three main credit bureaus, and monitoring his credit information as suggested by Defendant.

67.     Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

68.     Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

69.     In fact, following the Data Breach, Plaintiff has begun receiving spam calls and texts, suggesting that Plaintiff's information has been stolen and placed in the hands of cybercriminals.

70.     Plaintiff has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

*Plaintiff Lucas' Experience*

71.    Plaintiff Lucas is a Treeways employee.

72.    As a condition of employment with Treeways, Plaintiff was required to provide his PII, including but not limited to his full name and Social Security number.

73.    Plaintiff provided his Sensitive Information to Treeways and trusted that the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

74.    Plaintiff Pharr received a Breach Notice on June 20, 2023, from Defendant, indicating that his Sensitive Information, including at least his name, Bank Account information, date of birth, and Social Security number, may have been compromised in the Data Breach. In addition to the damages detailed herein, the Data Breach has caused Plaintiff Lucas, to be at substantial risk for further identity theft.

75.    Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for four months after Treeways finally discovered the Data Breach.

76.    Plaintiff suffered actual injury from the exposure of his Sensitive Information — which violates his rights to privacy.

77.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Sensitive Information. After all, Sensitive Information is a form of intangible property—property that Defendant was required to adequately protect.

78.    As a result of the Data Breach and the recommendations of Defendant's Notice, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial

account statements, changing his online account passwords, placing a credit freeze through the three main credit bureaus, and monitoring his credit information as suggested by Defendant.

79.    Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

80.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

81.    In fact, following the Data Breach, Plaintiff has begun receiving spam texts, suggesting that Plaintiff's information has been stolen and placed in the hands of cybercriminals.

82.    Plaintiff has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

83.    Plaintiffs and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

84.    The ramifications of Defendant's failure to keep Plaintiffs' and the Class's Sensitive Information secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security

number, or other nonpublic financial information, without permission, to commit fraud or other crimes.

85.    The types of Sensitive Information compromised and potentially stolen in the Treeways Data Breach is highly valuable to identity thieves. The employees' stolen Sensitive Information can be used to gain access to a variety of existing accounts and websites to drain assets, bank accounts or open phony credit cards.

86.    Identity thieves can also use this data to harm Plaintiffs and Class members through embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits. A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

87.    As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a.    The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of their Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in the possession of defendant and is subject to further breaches so long as defendant fails to undertake the appropriate measures to protect the Sensitive Information in their possession.

88.     Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.[4]

89.     The value of Plaintiffs' and the proposed Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

---

[4] Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited July 7, 2023).

90.     Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

91.     It can take victims years to spot identity or PII and PHI theft, giving criminals plenty of time to use that information for cash.

92.     One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

93.     Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.[5]

94.     The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and the proposed Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

---

[5] *Id.*

95.     Defendant disclosed the Sensitive Information of Plaintiffs and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiffs and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (*i.e.*, identity fraud), all using the stolen Sensitive Information.

96.     Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has exposed the Sensitive Information of Plaintiffs and members of the proposed Class to unscrupulous operators, con artists, and criminals.

*97.*     Defendant's failure to properly notify Plaintiffs and members of the proposed Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

**Treeways Failed to Adhere to FTC Guidelines**

98.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

99.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

18

    a.   protect the personal customer information that they keep;

    b.   properly dispose of personal information that is no longer needed;

    c.   encrypt information stored on computer networks;

    d.   understand their network's vulnerabilities; and

    e.   implement policies to correct security problems.

100.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

101.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

102.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

103.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Treeways Violated HIPAA***

104.    HIPAA requires covered entities to protect against reasonably anticipated threats

to the security of sensitive patient health information.

105.    Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

106.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, et seq. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Sensitive Information like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

107.    A Data Breach such as the one Defendant experienced, is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

108.    A breach under the HIPAA Rules is defined as, "the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40.

109.    Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Plaintiffs and Class Members Suffered Damages***

110.    The compromised and stolen information of Plaintiffs and Class members is private and sensitive in nature and was left inadequately protected by Treeways. Defendant did not obtain Plaintiffs' and Class members' consent to disclose this data to any other person as required by applicable law and industry standards.

111.    The data breach was a direct and proximate result of Defendant's failure to properly safeguard and protect Plaintiffs' and Class members' Sensitive Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including the failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' sensitive personal information to protect against reasonably foreseeable threats to the security or integrity of such information.

112.    Had Treeways remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, Treeways would have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and the Class Members' Sensitive Information.

113.    As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting data breach, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured.

114.    Defendant's wrongful actions and inaction directly and proximately caused the potential theft and dissemination into the public domain of Plaintiffs' and Class members' Sensitive Information, causing them to suffer, and continue to suffer, economic damages and other

actual harm for which they are entitled to compensation, including:

    a.  theft of their personal and financial information;

    b.  unauthorized charges on their debit and credit card accounts;

    c.  the actual, imminent, and certainly impending injury flowing from potential fraud and identity theft posed by their credit/debit card and personal information being placed in the hands of criminals and misused via the sale of Plaintiffs' and Class members' information on the Internet's black market;

    d.  the untimely and inadequate notification of the data breach;

    e.  the improper disclosure of their Sensitive Information;

    f.  loss of privacy;

    g.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

    h.  ascertainable losses in the form of deprivation of the value of their Sensitive Information, for which there is a well-established national and international market;

    i.  ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the data breach;

    j.  loss of use of, and access to, their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and

k.  the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data reach.

***Defendant's Offer of Credit Monitoring is Inadequate***

115.  At present, Treeways has offered several months of free credit monitoring provided to breach victims.

116.  As previously alleged, Plaintiffs' and the Class Members' Sensitive Information may exist on the Dark Web and in the public domain for months, or even years, before it is used for ill gains and actions. With only several months of monitoring, Plaintiffs and Class Members remain unprotected from the real and long-term threats against their personal, sensitive, and private data.

117.  Therefore, the "monitoring" services offered by Treeways are inadequate, and Plaintiffs and Class Members have a real and cognizable interest in obtaining equitable relief, in addition to the monetary relief requested herein.

## CLASS ACTION ALLEGATIONS

118.  Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all members of the proposes class (the "Class"), defined as follows:

> **Class:** All individuals residing in the United States whose Sensitive Information was compromised in the Treeways Data Breach, including all those who received notice of the breach.

23

119.    The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which the Defendant or its parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

120.    Plaintiffs reserve the right to amend the Class definition or add a Class if further information and discovery indicate that other classes should be added and if the definition of the Class should be narrowed, expanded, or otherwise modified.

121.    Plaintiffs and members of the Class satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23:

a.    **Numerosity**. The exact number of Class members is unknown but is estimated to be up to thousands of former and current Treeways employees at this time, and individual joinder in this case is impracticable. Class Members can be easily identified through Defendant's records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other data breach, employee breach of contract, unlawful trade practices, and class action controversies;

b.    **Typicality**: Plaintiffs' claims are typical of the claims of other Class members in that Plaintiffs, and the Class Members sustained damages arising out of Defendant's Data Breach, wrongful conduct and misrepresentations, false statements,

concealment, and unlawful practices, and Plaintiffs and the Class Members sustained similar injuries and damages, as a result of Defendant's uniform illegal conduct;

c.      **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiffs have no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiffs.

d.      **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

     i.   Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Sensitive Information;

     ii.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

     iii. Whether Defendant was negligent in maintaining, protecting, and securing Sensitive Information;

     iv.  Whether Defendant breached contract promises to safeguard Plaintiffs' and the Class's Sensitive Information;

     v.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

     vi.  Whether Defendant's Breach Notice was reasonable;

 vii. Whether the Data Breach caused Plaintiffs and the Class injuries;

 viii. What the proper damages measure is; and

 ix. Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

e. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## CLAIMS ALLEGED ON BEHALF OF PLAINTIFFS AND THE CLASS

### First Claim for Relief
### Negligence
### (On Behalf of Plaintiffs and the Class)

122.    Plaintiffs and the members of the Class incorporate the above allegations as if fully set forth herein.

123.    Plaintiffs and members of the Class entrusted their Sensitive Information to Treeways. Defendant owed a duty to Plaintiffs and the Class to exercise reasonable care in safeguarding and protecting their Sensitive Information and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure the Sensitive Information of Plaintiffs and the Class was adequately secured and protected, including using encryption technologies. Defendant further had a duty to implement processes that would detect a breach of its security system in a timely manner.

124.    Treeways was under a basic duty to act with reasonable care when it undertook to collect, create, and store Plaintiffs' and the Class's sensitive data on its computer system, fully aware–as any reasonable entity of its size would be–of the prevalence of data breaches and the resulting harm such a breach would cause. The recognition of Defendant's duty to act reasonably in this context is consistent with, *inter alia*, the Restatement (Second) of Torts § 302B (1965), which recounts a basic principle: an act or omission may be negligent if the actor realizes or should realize it involves an unreasonable risk of harm to another, even if the harm occurs through the criminal acts of a third party.

125.    Defendant knew that the PII and PHI of Plaintiffs and the Class was personal and sensitive information that is valuable to identity thieves and other criminals. Defendant also knew

of the serious harm that could happen if the Sensitive Information of Plaintiffs and the Class was wrongfully disclosed.

126.    By being entrusted by Plaintiffs and the Class to safeguard their Sensitive Information, Defendant had a special relationship with Plaintiffs and the Class. Plaintiffs and the Class agreed to provide their Sensitive Information with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiffs and the Class of any security concerns that might call for action by Plaintiffs and the Class.

127.    Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the Class members' Sensitive Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite failures and intrusions, and allowing unauthorized access to Plaintiffs' and the other Class member's Sensitive Information.

128.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the Class, their Sensitive Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the personal data of Plaintiffs and the Class and all resulting damages.

129.    The injury and harm suffered by Plaintiffs and the Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' Sensitive Information. Defendant knew its systems and technologies for processing and securing the Sensitive Information of Plaintiffs and the Class had numerous security vulnerabilities.

130.    As a result of this misconduct by Defendant, the Sensitive Information of Plaintiffs and the Class were compromised, placing them at a greater risk of identity theft and subjecting

them to identity theft, and their Sensitive Information was disclosed to third parties without their consent. Plaintiffs and Class members also suffered diminution in value of their Sensitive Information in that it is now easily available to hackers on the Dark Web. Plaintiffs and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

**<u>Second Claim for Relief</u>**
**Negligence *Per Se***
**(On Behalf of Plaintiffs and the Class)**

131.    Plaintiffs and the members of the Class incorporate the above allegations as if fully set forth herein.

132.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Sensitive Information.

133.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, patients' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's Sensitive Information.

134.    Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

135.    Defendant's duty of care to use reasonable security measures arose as a result of

the special relationship that existed between Defendant and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

136.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

137.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

138.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

139.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive

practices, caused the same harm as that suffered by Plaintiffs and the Class.

140.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

141.    But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and members of the Class, Plaintiffs and members of the Class would not have been injured.

142.    The injury and harm suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

143.    Had Plaintiffs and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiffs and members of the Class would not have entrusted Defendant with their Sensitive Information.

144.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

145.    As a direct and proximate result of Defendant's negligence per se, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other

harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

146.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

<u>**Third Claim for Relief**</u>
**Breach of Confidence**
**(On Behalf of Plaintiffs and the Class)**

147.    Plaintiffs and the members of the Class incorporate the above allegations as if fully set forth herein.

148.    At all times during Plaintiffs' and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' Sensitive Information that Plaintiffs and Class Members were provided to Defendant in exchange for employment.

149.    As alleged herein and above, Defendant's relationship with Plaintiffs and Class Members was governed by expectations that Plaintiffs' and Class Members' Sensitive Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

150.    Plaintiffs and Class Members provided their respective Sensitive Information to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the Sensitive Information to be disseminated to any unauthorized parties.

151.    Plaintiffs and Class Members also provided their respective Sensitive Information

to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect that Sensitive Information from unauthorized disclosure, such as following basic principles of information security practices.

152.   Defendant voluntarily received in confidence Plaintiffs' and Class Members' Sensitive Information with the understanding that the Sensitive Information would not be disclosed or disseminated to the public or any unauthorized third parties.

153.   Due to Defendant's failure to prevent, detect, and/or avoid the data breach from occurring by, *inter alia*, failing to follow best information security practices to secure Plaintiffs' and Class Members' PII, Plaintiffs' and Class Members' Sensitive Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

154.   As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiffs and Class Members have suffered damages.

155.   But for Defendant's disclosure of Plaintiffs' and Class Members' Sensitive Information in violation of the parties' understanding of confidence, their Sensitive Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' Sensitive Information, as well as the resulting damages.

156.   The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and Class Members' Sensitive Information. Defendant knew its computer systems and technologies for accepting and securing Plaintiffs' and Class Members' Sensitive Information had numerous security vulnerabilities because Defendant failed to observe industry standard information security

practices.

157.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from identity theft; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives, including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports, and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

158.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**Fourth Claim for Relief**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

159.    Plaintiffs and the members of the Class incorporate the above allegations as if fully set forth herein.

160.    Plaintiffs and Class Members were required to provide their Sensitive Information Defendant as a condition of receiving employment from Defendant. Plaintiffs and Class Members provided their Sensitive Information to Defendant in exchange for Defendant's employment.

161.    Plaintiffs and Class Members reasonably understood that a portion of the funds from their employment would be used by Defendant to pay for adequate cybersecurity and protection of their Sensitive Information.

162.    Plaintiffs and the Class Members accepted Defendant's offers by disclosing their Sensitive Information to Defendant in exchange for employment.

163.    In turn, and through internal policies, Defendant agreed to protect and not disclose their Sensitive Information to unauthorized persons.

164.    In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiffs' and Class Member's Sensitive Information.

165.    Implicit in the parties' agreement was that Defendant would provide Plaintiffs and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Information.

166.    After all, Plaintiffs and Class Members would not have entrusted their Sensitive Information to Defendant in the absence of such an agreement with Defendant.

167.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

168.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

169.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

170.    Defendant materially breached the contracts it entered with Plaintiffs and Class

Members by:

     a.  failing to safeguard their information;

     b.  failing to notify them promptly of the intrusion into its computer systems that compromised such information.

     c.  failing to comply with industry standards;

     d.  failing to comply with the legal obligations necessarily incorporated into the agreements; and

     e.  failing to ensure the confidentiality and integrity of the electronic Sensitive Information that Defendant created, received and maintained.

171.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

172.    Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

173.    Plaintiffs and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**Fifth Claim for Relief**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

174.    Plaintiffs and the members of the Class incorporate the above allegations as if fully set forth herein.

175.    This claim is pleaded in the alternative to the breach of implied contract claim.

176.    Plaintiffs and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from using their Sensitive Information to facilitate its business.

177.    Defendant appreciated or had knowledge of the benefits it received from Plaintiffs and Class Members. And Defendant benefited from receiving Plaintiffs' and Class Members'

Sensitive Information, as this was used to facilitate its business.

178.    Plaintiffs and Class Members reasonably understood that a portion of the funds from their employment would be by Defendant used to pay for adequate cybersecurity and protection of their Sensitive Information.

179.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Sensitive Information.

180.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

181.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and Class Members' services because Defendant failed to adequately protect their Sensitive Information.

182.    Plaintiffs and Class Members have no adequate remedy at law.

183.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

**<u>Sixth Claim for Relief</u>**
**Publicity Given to Private Life**
**(On Behalf of Plaintiffs and the Class)**

184.    Plaintiffs and the members of the Class incorporate the above allegations as if fully set forth herein.

185.    One who gives publicity to matters concerning the private life of another, of a kind

37

highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy.

186.    As a condition of receiving Defendant's employment, Plaintiffs and the Class provided Defendant with their private Sensitive Information.

187.    Defendant failed to employ adequate and reasonable security measures to prevent public disclosure of Plaintiffs' and the Class's Sensitive Information.

188.    Defendant failed to timely and reasonably notify Plaintiffs and the Class about the Data Breach, which made Plaintiffs and the Class vulnerable to identify theft.

189.    As a result of the disclosure of Plaintiffs' and the Class's Sensitive Information, Plaintiffs have suffered a *de facto* injury, which entitles them to general damages.

**Seventh Claim for Relief**
**Declaratory Judgment**
**(On Behalf of Plaintiffs and the Class)**

190.    Plaintiffs and the members of the Class incorporate the above allegations as if fully set forth herein.

191.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

192.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiffs alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiffs and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

193.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b.    Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c.    Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d.    Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiffs and Class Members.

194.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

195.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

196.    And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs' and Class Members' injuries.

197.    If an injunction is not issued, the resulting hardship to Plaintiffs and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

198.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

**PRAYER FOR RELIEF**

Plaintiffs and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E.  Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this 19th day of July, 2023.

BY:  */S/ Patrick Howard*
Patrick Howard* (PA ID #88572)
**SALTZ, MONGELUZZI, & BENDESKY, P.C**.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
phoward@smbb.com

Samuel J. Strauss
am@turkestrauss.com
Raina C. Borrelli
raina@turkestrauss.com
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
Facsimile: (608) 509-4423

*Attorneys for Plaintiff and the proposed Class*